**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEONARDO J. MOJICA CARRION, | No. 4:22-CV-00051 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JOHN E. WETZEL, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JULY 13, 2023**

Plaintiff Leonardo J. Mojica Carrion filed this *pro se* Section 1983[1] action, asserting constitutional tort claims against prison officials at the State Correctional Institution, Mahanoy (SCI Mahanoy) for allegedly mishandling his legal mail and causing him to lose an opportunity to challenge his state criminal conviction.  Mojica Carrion raises claims under the First and Fourteenth Amendments to the United States Constitution.  Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court will grant in part and deny in part Defendants' Rule 56 motion.

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.     FACTUAL BACKGROUND[2]

At all times relevant to the instant lawsuit, Mojica Carrion has been
incarcerated at SCI Mahanoy.[3]  He is currently serving a sentence of life
imprisonment without parole for, among other offenses, first-degree murder and
robbery.[4]  Mojica Carrion was convicted following a jury trial in August 2014,[5] and
his convictions became final in February 2018, 90 days after the Supreme Court of
Pennsylvania denied his petition for allowance of appeal.[6]

Mojica Carrion filed his "first" petition under Pennsylvania's Post Conviction
Relief Act (PCRA) on April 4, 2018.[7]  Although this was technically Mojica Carrion's
second petition (his initial PCRA petition had been granted, permitting him to file out-
of-time post-sentence motions and reinstating his direct appeal rights), it was
considered his "first" PCRA petition pursuant to *Commonwealth v. Turner*, 73 A.3d

---

[2]   Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a
separate, short, and concise statement of the material facts, in numbered paragraphs, as to
which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT
56.1.  A party opposing a motion for summary judgment must file a separate statement of
material facts, responding to the numbered paragraphs set forth in the moving party's statement
and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background
herein derives from the parties' Rule 56.1 statements of material facts.  Docs. 45, 48.  To the
extent the parties' statements are undisputed or supported by uncontroverted record evidence,
the court cites directly to the Rule 56.1 statements.

[3]   Doc. 45 ¶ 1.

[4]   *Id.* ¶ 4; *Commonwealth v. Mojica-Carrion*, No. 803 MDA 2021, 2021 WL 5316150, at *1 (Pa.
Super. Ct. Nov. 16, 2021) (nonprecedential).

[5]   *See Commonwealth v. Mojica-Carrion*, No. 1197 MDA 2016, 2017 WL 2615899, at *3 (Pa.
Super. Ct. June 16, 2017) (nonprecedential).

[6]   Doc. 45 ¶ 5; *Commonwealth v. Mojica-Carrion*, No. 454 MAL 2017, 175 A.3d 221 (Pa. 2017)
(table); *see Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999) (holding that
judgment of conviction becomes final after "the time for seeking certiorari review [from the
Supreme Court of the United States] expires").

[7]   Doc. 45 ¶ 6; Doc. 1-5 at 3.

1283 (Pa. Super. Ct. 2013).[8]  Mojica Carrion raised 23 claims of ineffective assistance

of counsel in his April 2018 PCRA petition, which were all denied.[9]

On appeal, Mojica Carrion attempted to add an additional claim in a

supplemental brief.[10]  He asserted, for the first time, that the prosecution had failed to

disclose an agreement between the Commonwealth and its key witness—co-defendant

Estiben Manso—that granted Manso prosecutorial leniency for his role in the robbery

and murder in exchange for trial testimony against Mojica Carrion.[11]  This type of

claim implicates *Brady v. Maryland*, 373 U.S. 83 (1963), which held that, under the

Fourteenth Amendment's due process guarantees, the state must disclose evidence

favorable to the accused prior to trial.[12]  The Superior Court acknowledged the new

*Brady* claim, but held that Mojica Carrion had waived this claim because he did not

raise it with the lower court in his PCRA petition.[13]  The panel, however, noted that

Mojica Carrion may be able to assert his *Brady* claim in a subsequent PCRA petition

if he could satisfy the PCRA's timeliness requirements.[14]

---

[8]  *See* Doc. 1-5 at 3-4 & n.11.  In *Turner*, the Pennsylvania Superior Court held that when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be deemed a "first" petition for timeliness purposes.  *See Turner*, 73 A.3d at 1286.

[9]  Doc. 1-5 at 4.

[10]  *Id.*

[11]  *Id.* at 4-5.

[12]  *See Brady*, 373 U.S. at 87.  Although Defendants assert that Mojica Carrion raised this *Brady* claim in his April 2018 PCRA petition, *see* Doc. 45 ¶ 6, it was actually raised for the first time in a supplemental brief on appeal to the Superior Court.  *See* Doc. 1-5 at 4.

[13]  *See Commonwealth v. Mojica-Carrion*, No. 2102 MDA 2019, 2020 WL 7385758, at *3 (Pa. Super. Ct. Dec. 16, 2020) (nonprecedential) (citing *Commonwealth v. Fletcher*, 986 A.2d 759, 778 (Pa. 2009); PA. R. APP. P. 302(a)).

[14]  *See id.*, at *3 n.6.

Mojica Carrion attempted to do just that, filing a second PCRA petition on

January 4, 2021, in which he asserted the *Brady* claim regarding Manso's allegedly

undisclosed agreement with the prosecution.[15]  Mojica Carrion argued, in part, that he

could meet the exception to the PCRA's one-year statute of limitations based on

newly discovered facts.[16]  On April 20, 2021, the trial court (now acting as the PCRA

court) issued an order and notice of intent to dismiss the second petition as untimely,

finding that Mojica Carrion had failed to meet any of the PCRA's statute-of-

limitations exceptions provided by 42 PA. CONS. STAT. § 9545(b)(1)(i)-(iii).[17]  The

April 20, 2021 order gave Mojica Carrion 20 days to respond to the proposed

dismissal and warned that failure to timely respond would result in an order

dismissing the second PCRA petition.[18]

On June 9, 2021, having received no response from Mojica Carrion, the PCRA

court dismissed the petition.[19]  Mojica Carrion appealed, but the Superior Court

affirmed the PCRA court's dismissal of his second PCRA petition as untimely.[20]  It

does not appear that he filed a petition for allowance of appeal with the Pennsylvania

Supreme Court.

---

[15]  Doc. 31 ¶ 5; Doc. 45 ¶ 8. Mojica Carrion additionally asserted a claim of ineffective assistance of counsel for failing to investigate the existence of an agreement between Manso and the prosecution.  *See* Doc. 1-5 at 5-6.

[16]  *See* Doc. 1-5 at 7-15; Doc. 1-6 at 2; Doc. 31 ¶ 5; 42 PA. CONS. STAT. § 9545(b)(1)(ii).

[17]  Doc. 1-5 at 1, 7, 15.

[18]  *Id.* at 15.

[19]  Doc. 1-6 at 2.

[20]  *See Commonwealth v. Mojica-Carrion*, No. 803 MDA 2021, 2021 WL 5316150, at *1, 4 (Pa. Super. Ct. Nov. 16, 2021) (nonprecedential).

The PCRA court's April 20, 2021 order—more specifically, its handling by SCI Mahanoy officials—is the gravamen of the instant lawsuit. It is undisputed that the Berks County Clerk of Courts promptly mailed a copy of the April 20, 2021 order to Mojica Carrion at SCI Mahanoy, and that the SCI Mahanoy mailroom received the mailing on April 23, 2021.[21] It is likewise undisputed that mailroom employee (and defendant) Barbara Ralston rejected the mail and returned it to the court based on the then-existing version of Pennsylvania Department of Corrections (DOC) mail policy DC-ADM 803.[22]

The reason for the rejection was that the Berks County Clerk of Courts did not include a "court control number" on the envelope, as required by DC-ADM 803 § 1(D)(1).[23] Mojica Carrion was not notified that his court mail had been rejected,[24] and he did not learn of the rejection until August 31, 2021—well after the deadline to respond to the PCRA court's order.[25]

According to Mojica Carrion, the lack of notice of the April 20, 2021 order resulted in the dismissal of his second PCRA petition because the PCRA court (and the Superior Court on appeal) relied on an incomplete record when deciding his *Brady* claim.[26] He alleges that the PCRA court only considered Manso's January 6, 2015

---

[21]  Doc. 45 ¶¶ 15, 17.
[22]  *Id.* ¶¶ 15-18; *see generally* COMMONWEALTH OF PA. DEP'T OF CORR., Policy Statement DC-ADM 803: Inmate Mail & Incoming Publications (2020) [hereinafter "DC-ADM 803"].
[23]  Doc. 45 ¶¶ 15, 16, 18; *see* DC-ADM 803 § 1(B)(1)(c), (D)(1).
[24]  Doc. 45 ¶ 19.
[25]  *Id.* ¶ 20.
[26]  *See* Doc. 31 ¶¶ 24-26.

Guilty Plea and Sentencing transcript and ignored the "Disposition of Charges" document that he had also included with his second PCRA petition.[27]

The "Disposition of Charges" form is hand-dated "January 6, *2014.*"[28] According to Mojica Carrion, this document establishes that there was a firm pretrial agreement between Manso and the Commonwealth to exchange trial testimony for a more lenient sentence.[29]  Mojica Carrion appears to contends that, if he had received the April 20, 2021 order and notice of intent of dismissal, he could have responded to the PCRA court, argued that he had provided evidence of a pretrial "pre-arranged deal or agreement" between Manso and the Commonwealth via the Disposition of Charges document, and sought an evidentiary hearing regarding the document's completion date.[30]

After exhausting his administrative remedies, Mojica Carrion filed suit in this Court in January 2022.[31]  He then amended his complaint by identifying the "Jane Doe" defendant mailroom employee as Ralston.[32]  He additionally names as a defendant former Secretary of the DOC, John E. Wetzel.[33]  Mojica Carrion alleges violations of his First and Fourteenth Amendment rights.[34]  Defendants now move for

---

[27]   *See id.* ¶¶ 11-12, 14.
[28]   *See* Doc. 1-1 at 2 (emphasis supplied).
[29]   Doc. 31 ¶ 7.
[30]   *See id.* ¶¶ 11-12, 14, 25-26; Doc. 53 at 6, 8-9.
[31]   *See generally* Doc. 1.
[32]   *See generally* Doc. 31.
[33]   *Id.* ¶ 4.
[34]   *Id.* ¶¶ 21-23.

summary judgment on all claims against them.[35]  Their Rule 56 motion is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[36]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[38]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[39]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[40]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at

---

[35]   Doc. 44.
[36]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[37]   FED. R. CIV. P. 56(a).
[38]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[39]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[40]   *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

issue.[41]  A "scintilla of evidence" supporting the nonmovant's position is insufficient;

"there must be evidence on which the jury could reasonably find for the

[nonmovant]."[42]  Succinctly stated, summary judgment is "put up or shut up time" for

the nonmoving party.[43]

## III.   DISCUSSION

Before addressing Defendants' Rule 56 arguments, the Court must identify the

claimed constitutional violation or violations.[44]  Mojica Carrion appears to assert three

constitutional torts based on Ralston's rejection of the April 20, 2021 order without

notification or a "reasonable opportunity to protest": (1) an unspecified First

Amendment "free speech" claim; (2) a First and Fourteenth Amendment access-to-

courts claim; and (3) a Fourteenth Amendment procedural due process claim.[45]

The Court need not expend significant time on Mojica Carrion's free-speech

claim.  That is because a single instance of interference with legal or personal mail is

generally insufficient to establish a First Amendment free-speech claim.[46]  For

---

[41]   *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[42]   *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[43]   *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

[44]   *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

[45]   Doc. 31 ¶¶ 21-23.

[46]   *See Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014) (nonprecedential) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)); *cf. Nixon v. Sec'y of Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) (nonprecedential) ("[A] single, isolated interference with [an inmate's] personal mail [is] insufficient to constitute a First Amendment

example, a free-speech interference claim often involves a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence" such that it "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech."[47]  The single incident of rejecting court mail in the instant case simply does not rise to the level of a First Amendment free-speech violation.[48]  Moreover, Mojica Carrion does not provide any discussion in his brief in opposition as to how his First Amendment rights were violated, instead rehashing his procedural due process argument.[49]

Accordingly, Mojica Carrion's free-speech claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  This leaves Mojica Carrion's access-to-courts and procedural due process claims.  The Court will take Defendants' Rule 56 challenges to these claims in turn.

### A.    First and Fourteenth Amendment Access-to-Courts Claim

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections

---

violation."); *see also Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995) ("We decline to hold that a single instance of damaged mail rises to the level of constitutionally impermissible censorship."), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

[47]   *Jones v. Brown*, 461 F.3d 353, 358-59 (3d Cir. 2006) (citation omitted).

[48]   As Defendants note, the DOC modified its DC-ADM 803 policy in March 2022 "to require notification to inmates any time their mail is rejected or otherwise not delivered." *See* Doc. 46 at 8 n.2 (citing Doc. 46-1).

[49]   *See* Doc. 53 at 7-8.

system."[50]  Under the First and Fourteenth Amendments to the United States

Constitution, "prisoners retain a right of access to the courts."[51]  Inmates, however,

may only proceed on access-to-courts claims in two situations: "challenges (direct or

collateral) to their sentences and conditions of confinement."[52]  To establish an

access-to-courts claim that is backward-looking in nature,[53] the prisoner must

demonstrate that "(1) that they suffered an 'actual injury'—that they lost a chance to

pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no

other 'remedy that may be awarded as recompense' for the lost claim other than in the

present denial of access suit."[54]  "The underlying lost or rejected legal claim must be

specifically identified and meritorious."[55]

Mojica Carrion's access-to-courts claim fails as a matter of law at the first

element.  He did not suffer an actual injury—*i.e.*, a lost chance to pursue a

nonfrivolous or arguable underlying claim—due to SCI Mahanoy's rejection without

notice of the April 20, 2021 order.  This is so for two reasons.

---

[50]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[51]  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[52]  *Id.* (citing *Lewis*, 518 U.S. at 354-55).

[53]  There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

[54]  *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).

[55]  *Allen v. Ripoll*, 150 F. App'x 148, 150 (3d Cir. 2005) (nonprecedential) (citing *Christopher*, 536 U.S. at 414).

First, Mojica Carrion did not lose an opportunity to pursue a claim. Mojica Carrion presented his *Brady* claim and supporting evidence to the PCRA court, and that court fully considered this claim.[56] Mojica Carrion explicitly avers that he filed both Manso's January 6, 2015 Guilty Plea and Sentencing transcript *and* the "Disposition of Charges" document with his second PCRA petition.[57] This is not a case where a plaintiff was prevented from submitting supporting evidence or from filing a timely appeal. Moreover, Mojica Carrion was able to appeal the PCRA court's decision, and the Superior Court rejected his claim on appeal. Nothing prevented Mojica Carrion from arguing in his second PCRA petition or on appeal that the Disposition of Charges form purportedly established an express, pretrial leniency agreement between Manso and the Commonwealth.

Second, Mojica Carrion's *Brady* claim ultimately lacks merit. Both the PCRA court and the Superior Court rejected it, albeit indirectly. The gravamen of his present argument is that the Disposition of Charges document establishes that Manso and the Commonwealth entered into an express leniency-in-exchange-for-testimony agreement on January 6, 2014 (not January 6, 2015), approximately six months prior to Mojica Carrion's trial.[58] Mojica Carrion maintains that he lost the opportunity to inform the PCRA court that it failed to consider this "smoking gun" evidence and to

---

[56]   *See* Doc. 1-1 at 12-15. Although the PCRA court ultimately found Mojica Carrion's second PCRA petition to be untimely, *see id.* at 7, it included an extensive discussion on the merits of his *Brady* claim, *see id.* at 12-15.
[57]   *See* Doc. 31 ¶¶ 5-8; Doc. 45 ¶ 9.
[58]   *See* Doc. 53 at 4.

seek an evidentiary hearing.  The insurmountable problem for Mojica Carrion is that

the Superior Court considered and explicitly rejected this argument, instead finding

that the entry of the year "2014" on the Disposition of Charges form was a simple

scrivener's error.[59]  The record evidence supports this conclusion.  The panel

explained,

> [Mojica Carrion] insists that a "Disposition of Charges" form filed in
> Manso's case is proof that Manso struck a deal with the Commonwealth
> before [Mojica Carrion]'s trial.  That document states that five counts
> pending against Manso were dismissed, and is hand-dated January 6,
> **2014**, which was over six months before [Mojica Carrion]'s trial began.
> However, the handwritten date on the "Disposition of Charges" form
> seems to be a simple mistake.  First, the form was time-stamped by the
> Clerk of Courts on January 6, 2015.  Moreover, it states: "The defendant[,]
> having been sentenced on Counts 6 [and] 7, ... and[ ] on motion of the
> District Attorney, Counts 1-5[ ] are dismissed." [Mojica Carrion]'s PCRA
> Petition at Exhibit G (emphasis added).  Manso pled guilty and was
> sentenced on January 6, 2015.  The docket also indicates that Manso's
> [other] charges were dismissed on January 6, 2015.  This record
> demonstrates that the 2014 date handwritten on the "Disposition of
> Charges" form was simply an error, and that the form was actually
> completed in 2015.[60]

The Superior Court's reasoning on this issue is thorough and unassailable.

The Court additionally observes that Mojica Carrion asserted his *Brady* claim

(including his argument based on the handwritten date on the Disposition of Charges

document) in his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[61]

---

[59]   *See Mojica-Carrion*, No. 803 MDA 2021, 2021 WL 5316150, at *3 n.2.
[60]   *Id.*
[61]   *See Mojica-Carrion v. Mason*, No. 21-cv-727, 2022 WL 20273672, at *9-11 (E.D. Pa. Mar.
       17, 2022), *report and recommendation adopted by* No. 21-cv-727, 2022 WL 20273574, at *1
       (E.D. Pa. May 13, 2022).

The claim was again rejected, this time by a federal court.[62]

In sum, Mojica Carrion cannot establish a Section 1983 access-to-courts claim because he did not lose the opportunity to present a claim and because the underlying claim is frivolous.  Summary judgment, therefore, must be granted in Defendants' favor on this cause of action.

### B.      Fourteenth Amendment Due Process Claim

Mojica Carrion additionally asserts that SCI Mahanoy's rejection of his legal mail without notice violated his procedural due process rights under the Fourteenth Amendment.  Defendants concede that a violation occurred but argue that qualified immunity precludes Section 1983 liability.[63]  The Court disagrees.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[64]  The Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[65]

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that

---

[62]   *See id.*
[63]   *See* Doc. 46 at 13.
[64]   *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[65]   *Id.*

right.'"[66]  "[C]learly established rights are derived either from binding Supreme Court

and Third Circuit precedent or from a 'robust consensus of cases of persuasive

authority in the Courts of Appeals.'"[67]

Defendants argue that Mojica Carrion's claims are barred by qualified

immunity because the constitutional right which he contends was violated was not

clearly established until *after* the incident underlying his lawsuit.  That right, defined

"in light of the specific context" of this case,[68] is the right for a prisoner to receive

notice and an opportunity to challenge prison officials' rejection of that inmate's

incoming mail.[69]

Defendants maintain that *Vogt v. Wetzel*,[70] decided on August 9, 2021, clearly

established the constitutional right at issue.  In that case, the inmate-plaintiff argued

that rejection of his incoming mail by prison officials (under DC-ADM 803) without

notice of the rejection violated his due process rights.[71]  The Third Circuit agreed and

held that "prisons must notify inmates when their incoming mail is rejected."[72]

---

[66]  *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[67]  *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (quoting *Fields v. City of Philadelphia*, 862 F.3d 353, 361 (3d Cir. 2017)).

[68]  *See Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023) (noting that first step for "clearly established" qualified-immunity prong is to "define the right allegedly violated at the appropriate level of specificity").

[69]  Defendants appear to define the right at issue as "the right to be notified when mail that fails to conform to prison requirements is rejected pursuant to a prison's content-neutral policy." Doc. 46 at 11.  Even if the right is defined in this manner, for reasons explained *infra*, such a right was clearly established before the incident in the case at bar.

[70]  8 F.4th 182 (3d Cir. 2021).

[71]  *See id.* at 185, 186.

[72]  *Id.* at 184.

However, as Mojica Carrion points out, the United States Supreme Court's

decision in *Procunier v. Martinez*[73] substantially predates *Vogt v. Wetzel* and had

already established a due process right to notice and an opportunity to challenge a

prison's rejection of an inmate's mail.  Indeed, while the *Vogt* panel observed that the

liberty interest for prisoners to correspond by mail was "first recognized by the

Supreme Court in *Procunier*," it also found that *Procunier* mandated that "prisons

must provide 'minimum procedural safeguards' when they 'censor or withhold

delivery of a particular letter,'" and that due process required "notice and a reasonable

chance to challenge the original official's decision [to censor or withhold delivery of a

particular letter]."[74]  Thus, *Procunier*, not *Vogt*, established a prisoner's due process

right to notice and an opportunity to challenge a prison's rejection of that inmate's

incoming mail.[75]  *Vogt* simply explained how *Procunier* applied to the facts of that

particular case.

Defendants' primary argument is that *Procunier* dealt with censorship based on

content and not "a content-neutral rejection policy."[76]  This argument, however, was

repudiated in *Vogt*: "[Defendant] contends *Procunier* applies to censorship cases,

while here we consider a content-neutral rejection policy.  The trouble with this

argument is *Procunier* identified a liberty interest in corresponding by mail.  And just

---

[73]   416 U.S. 396 (1976), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).
[74]   *See Vogt*, 8 F.4th at 186 (citing and quoting *Procunier*, 416 U.S. at 417-19).
[75]   *See Procunier*, 416 U.S. at 417-19.
[76]   Doc. 46 at 13, 14.

as a censorship policy constrains correspondence by mail, *so too does a rejection policy*."[77]  In other words, it appears that the Third Circuit has already determined that *Procunier*'s procedural due process holding is broad enough to encompass a content-neutral rejection policy.

Defendants additionally argue that challenges to prison mail policies have typically been analyzed under the rubric of a First Amendment free-expression claim through consideration of the *Turner v. Safley*[78] factors.[79]  While that may be so (and is likely the result of the plaintiffs' framing in those cases), *Procunier* specifically dealt with a Fourteenth Amendment due process challenge to a prison mail policy in addition to a First Amendment free-speech claim.[80]  And Mojica Carrion undoubtedly asserted a similar Fourteenth Amendment due process claim in his pleadings.

Defendants caution that the right at issue should not be "defined at a high level of generality," and then posit that "*Procunier*'s general proposition that an inmate has a liberty interest in communicating by mail" is insufficient to appropriately define the right for qualified immunity purposes.[81]  This assertion is sound as far as it goes. However, it overlooks one of the main—and much more specific—holdings of *Procunier*: procedural due process requires that withholding delivery of a prisoner's mail "must be accompanied by minimum procedural safeguards," which include

---

[77]   *Vogt*, 8 F.4th at 186 (emphasis supplied) (citing *Procunier*, 416 U.S. at 418).
[78]   482 U.S. 78 (1987).
[79]   *See* Doc. 46 at 14-15.
[80]   *See Vogt*, 8 F.4th at 186 (citing *Procunier*, 416 U.S. at 415, 419).
[81]   Doc. 46 at 15.

16

notice of the rejection and an opportunity to challenge it.[82]  It is difficult to see how

*Procunier*'s due process holding does not clearly establish the constitutional right

invoked by Mojica Carrion regarding notice of rejection of his legal mail.

Finally, the Court notes that a "robust consensus" of Court of Appeals cases

from other circuits have held that *Procunier* clearly establishes a due process right to

notice and an opportunity to challenge a prison's decision to censor or withhold an

inmate's mail.[83]  For all these reasons, the Court must deny Defendants' assertion of

qualified immunity as to Mojica Carrion's Fourteenth Amendment due process claim.

**C.      Official Capacity Claims**

Mojica Carrion sued both Defendants in their individual and official

capacities.[84]  However, official capacity claims seeking monetary damages from state

officials are barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal

courts from entertaining lawsuits—by United States citizens or citizens of foreign

---

[82]    *See Procunier*, 416 U.S. at 417-19; *Vogt*, 8 F.4th at 186.

[83]    *See Miller v. Downey*, 915 F.3d 460, 465-66 (7th Cir. 2019); *Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1367-68 (11th Cir. 2011); *Bonner v. Outlaw*, 552 F.3d 673, 679-80 (8th Cir. 2009) (finding that due process right to notice of prison's rejection of legal mail was clearly established by *Procunier*); *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004); *Johnson v. El Paso Cnty. Sheriff's Dep't*, 51 F.3d 1041, at *5 (5th Cir. 1995) (nonprecedential) (reversing grant of qualified immunity and finding that right to notice and opportunity to challenge prison's rejection of an incoming letter was clearly established by *Procunier*); *Martin v. Kelly*, 803 F.2d 236, 243 (6th Cir. 1986); *Hopkins v. Collins*, 548 F.2d 503, 504 (4th Cir. 1977) (*per curiam*) (finding that the Supreme Court "has clearly set forth the minimal standards of censorship of prison mail in *Procunier*").

[84]    *See* Doc. 31 ¶ 4.

states—brought against a state.[85]  This immunity from private suit extends to state

agencies as well as state officials acting in their official capacity, because such

lawsuits are essentially civil actions "against the State itself."[86]  States may waive this

immunity if they choose, but Pennsylvania has explicitly not waived its immunity

with respect to claims brought under Section 1983.[87]  There are two exceptions to the

Eleventh Amendment's bar to private suits against nonconsenting states: (1)

"Congress may abrogate a state's immunity" and (2) "parties may sue state officers

for *prospective* injunctive and declaratory relief."[88]

Mojica Carrion seeks "compensatory and punitive" damages from

Defendants.[89]  His official capacity claims against them, therefore, are barred by

Eleventh Amendment sovereign immunity and must be dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B)(iii).[90]

## IV.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part

Defendants' motion (Doc. 44) for summary judgment pursuant to Federal Rule of

---

[85]  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[86]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[87]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[88]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[89]  Doc. 31 ¶ 27.

[90]  Section 1915(e)(2)(B)(iii) requires dismissal of a claim at any time if the court determines that "the action or appeal . . . seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(iii).

Civil Procedure 56.  The Court will also *sua sponte* dismiss several of Mojica

Carrion's claims that cannot survive scrutiny under 28 U.S.C. § 1915(e)(2)(B).  An

appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge